FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY M., | NO: 1:21-CV-03099-LRS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 15, 17.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney Cory J. Brandt.  Defendant is

represented by Special Assistant United States Attorney Jeffrey E. Staples.  The

ORDER - 1

Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 15, is denied and Defendant's Motion, ECF No. 17, is granted.

## JURISDICTION

Kimberly M. [1] (Plaintiff) filed for disability insurance benefits and for supplemental security income on April 14, 2011, alleging in both applications an onset date of October 31, 2009.  Tr. 190-202.   Benefits were denied initially, Tr. 124-30, and upon reconsideration, Tr. 133-36.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 2, 2012.  Tr. 35-79.  On August 27, 2012, the ALJ issued an unfavorable decision, Tr. 19-34, and the Appeals Council denied review.  Tr. 1-6.  Plaintiff appealed to the U.S. District Court for the Western District of Washington, and on June 23, 2014, pursuant to the stipulation of the parties, Magistrate Judge Mary Alice Theiler remanded the matter for additional proceedings.  Tr. 526-36.

On December 3, 2015, Plaintiff appeared at a second hearing, Tr. 463-95, and on January 19, 2016, the ALJ issued another unfavorable decision.  Tr. 440-62.  The Appeals Council denied review, Tr. 419-23, and Plaintiff again appealed to the U.S. District Court.  On February 17, 2017, United States Magistrate Judge David W. Christel remanded the matter for additional proceedings.  Tr. 1124-39.

---

[1] The last initial of the claimant is used to protect privacy.

ORDER - 2

On May 3, 2018, Plaintiff appeared at a third hearing.  Tr. 2085-2121.  On September 26, 2018, the ALJ issued a third unfavorable decision.  Tr. 1948-80.  Plaintiff again appealed to the U.S. District Court and on March 24, 2020, the Honorable Fred Van Sickle again remanded the matter for additional proceedings.  Tr. 2012-50.  After a fourth hearing on June 9, 2021, Tr. 1873-1917, the ALJ issued a fourth unfavorable decision on May 18, 2021.  Tr. 1918-47.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 37 years old at the time of the first hearing in 2012.  Tr. 39.  She completed high school.  Tr. 39.  She has work experience as a certified nurse's assistant and as a hospital unit clerk.  Tr. 40-41.  She testified that she could no longer do those jobs because she was too intimidated to talk to the doctors and would shake violently when caring for patients.  Tr. 42.  She had a lot of panic attacks at work.  Tr. 49.  In 2015, she testified that she cannot work due to morning anxiety attacks.  Tr. 476.  She never knows when she will wake up with debilitating pain or mental issues due to fibromyalgia.  Tr. 476.  She has trouble concentrating and with short-term memory.  Tr. 480.  In 2018, she testified that she cannot work because her severe anxiety prevents her from going places and fibromyalgia makes

her feel like she has the flu, with allover pain and sickness. Tr. 2100. It has gotten

worse over time. Tr. 2101.

At the time of the fourth hearing, Plaintiff was 46 years old. Tr. 1922. She

testified that she often feels like she has full body flu. Tr. 1934. She has full panic

attacks about once a week. Tr. 1935. Two to three times per week she feels unable

to leave the house or go anywhere. Tr. 1935. She wakes up stiff and in pain. Tr.

1935. She has trouble thinking and talking. Tr. 1935. It takes her a couple of hours

to be able to walk correctly. Tr. 1935. She has difficulty concentrating. Tr. 1935-

36. She isolates herself at home about 50 percent of the time. Tr. 1938. She

believes she has a central nervous system disorder. Tr. 1939.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

citation omitted). Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but

cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§

404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 31, 2009.  Tr. 1880.  At step two, the ALJ found that Plaintiff has the following severe impairments: anxiety disorder; depressive/affective disorder; PTSD; personality disorder; fibromyalgia; carpal tunnel syndrome; and obesity.  Tr. 1880.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 1881.  The ALJ then found that Plaintiff has the residual

functional capacity to perform sedentary work with the following additional

limitations:

> She is only able to remember, understand, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of SVP level one and two jobs. She cannot perform overhead reaching. She can frequently reach at or below shoulder level. She can perform frequent handling and fingering. She can have no contact with the public. She can work in proximity to but not in coordination with co-workers. She can have occasional contact with supervisors. She can perform occasional stooping. She cannot crouch, crawl, or knee, and cannot climb ramps, stairs, ropes, ladders, scaffolds. She cannot work at heights; ambulate across uneven surfaces; or work in proximity to hazardous conditions.

Tr. 1883.

At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work. Tr. 1902. At step five, after considering and Plaintiff's age,

education, work experience, and residual functional capacity, the ALJ found that

there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform such as document preparer, final assembler, or addresser. Tr. 1903.

Thus, the ALJ determined that Plaintiff has not been under a disability, as defined in

the Social Security Act at any time from October 31, 2009, through the date of the

decision. Tr. 1903.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

disability income benefits under Title II and supplemental security income under

Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following

issues for review:

      1.  Whether the ALJ properly considered Plaintiff's testimony;

      2.  Whether the ALJ properly considered the medical opinions;

      3.  Whether the ALJ properly considered the law witness statements; and

      4.  Whether the ALJ made a proper step five finding.

ECF No. 15 at 17.

## DISCUSSION

**A.      Symptom Testimony**

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

determine whether there is objective medical evidence of an underlying impairment

which could reasonably be expected to produce the pain or other symptoms alleged."

*Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

required to show that her impairment could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could reasonably

have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the ALJ

must identify what testimony is not credible and what evidence undermines the

claimant's complaints." *Id*. (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.

1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most demanding

required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir.

2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir.

2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found Plaintiff's mental health symptoms improved with

treatment. Tr. 1886. The effectiveness of treatment is a relevant factor in

determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3),

416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

(9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  The ALJ cited numerous records over time showing that Plaintiff's symptoms improved, her anxiety decreased, she was doing "remarkably well," was stable, was "better than ever," that her behavior and functioning were "exemplary," and that she functioned well despite stressors.  Tr. 1886 (citing Tr. 295, 324-25, 344-45, 901, 892-93, 886-87, 687-88, 855-56, 844, 820-23, 785, 668). The ALJ acknowledged findings of anxious mood, tearfulness, and mild hand tremor, but noted other records do not reflect such symptoms.  Tr. 1886.  To the extent the evidence conflicts or is mixed, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).

Furthermore, the ALJ noted that despite allegations of constant anxiety, especially in social settings, Plaintiff denied anxiety to some medical providers and did not demonstrate any notable symptoms of anxiety.  Tr. 1886 (citing *e.g.*, Tr. 2786, 2803).  She reported improvement with treatment (Tr. 2723, 2728, 2739, 2750), used tools she learned in treatment to manage her anxiety (Tr. 1353, 1361), made "great strides" in managing her anxiety (Tr. 1635) and made good or excellent progress with treatment.  (Tr. 2894, 2897, 2899, 2907, 2909, 2911).  Plaintiff argues

the record "clearly shows" that her symptoms prevented her from working, even with improvement from treatment, but does not cite the record or explain how the record contradicts the ALJ's finding. ECF No. 15 at 31. This is a clear and convincing reason supported by substantial evidence.

Second, the ALJ found Plaintiff's physical symptoms are inconsistent with other evidence in the record. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found that the evidence is partially consistent with Plaintiff's allegations, noting that some exams reflected 18/18 tender points (Tr. 2419-2426), but others were negative regarding tender points or other abnormal findings (Tr. 681). Tr. 1887. The ALJ observed that objective medical findings were typically benign with no significant abnormality in any area and that imaging showed minimal or no abnormalities that were concerning to medical providers. Tr. 1887 (numerous citations). However, it is noted that fibromyalgia is a disease that eludes objective

measurement.  *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'"  *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017).  Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia."  *Id.* at 666.  To the extent the ALJ rejected Plaintiff's symptom claims regarding fibromyalgia due to lack of objective evidence, the finding is not particularly persuasive.

However, the ALJ reviewed the evidence of carpal tunnel syndrome in detail and concluded that the record does not support any restriction greater than the RFC. Tr. 1887-88.  The ALJ also noted that Plaintiff's presentation was unremarkable even when she reported severe or worsening levels of pain and limitations, and when she reported 9/10 pain in her knee.  Tr. 1887 (citing *e.g.*, Tr. 1331, 1333, 1666, 2822-23).   The ALJ's finding is supported by substantial evidence, at least as to those impairments.

Third, the ALJ found inconsistencies between Plaintiff's allegations and the record.  An ALJ may reject a claimant's testimony if her statements are inconsistent. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  The ALJ cited Plaintiff's ability to attend treatment visits independently and consistently despite allegations that she was disabled by her symptoms and feels like her bones are breaking two and a half weeks out of every month.  Tr. 1888 (citing Tr. 1302-09). The ALJ found this inconsistent with allegations that she cannot leave her residence

at all two to three days per week and that she isolates in her house 50 percent of the time.  Tr. 1888; *see* Tr. 1935, 1938.  The ALJ also noted that Plaintiff testified that she could not work because of difficulty interacting with others and going out in public due to anxiety and panic attacks.  Tr. 1890.  However, the ALJ noted that in function reports and at a November 2020 exam, Plaintiff reported no problems interacting with other people.  Tr. 1890-91 (citing Tr. 232-39, 248-55, 2280-87, 2298-2306, 3001).  The ALJ questioned Plaintiff about the inconsistency at the hearing and she stated that she only has trouble interacting with people she does not know.  Tr. 1891, 1928-29.  The ALJ found this to be an unsatisfactory explanation because Plaintiff shops in stores, attends appointments on a regular basis, and is able to travel, all of which suggest an ability to manage interactions with people she does not know.  Tr. 1891.  The ALJ also observed that Plaintiff reported an inability to tolerate essentially all medications and declined to accept physical therapy referrals, but the record reflects little or no evidence of side effects from medication.  Tr. 1891 (citing Tr. 1666-1782, 2773-2784); *see* Tr. 1886 (citing Tr. 1426, 1430, 1434, 1438, 1446).  This evidence was reasonably considered by the ALJ, and this is a clear and convincing reason supported by substantial evidence.

Fourth, the ALJ found Plaintiff's symptom testimony is inconsistent with her activities.  Tr. 1888-89.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom claims.  *See Rollins*, 261 F.3d at 857.  Even if a claimant's daily activities do not

demonstrate a claimant can work, they may undermine the claimant's complaints if they suggest the severity of the claimant's limitations were exaggerated. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

The ALJ discussed Plaintiff's allegations and activities in detail. Tr. 1888. The ALJ noted that Plaintiff cared for her daughter daily, does household chores, shops at the grocery store and the pet store, goes to appointments, went to church or Bible study at various times, advocated for herself and her daughter in a custody matter, reported that she was "on top of most things" such as budget, home organization, and parenting, and takes care of her child whether she is sick or not. Tr. 1888-89. The ALJ acknowledged that Plaintiff testified she received help from family members but did not find it believable for several reasons. Tr. 1889. Regardless, even if she received help with childcare a few times per month, the ALJ found that was not consistent with the level of disability alleged; i.e., Plaintiff would have required more help. Tr. 1889.  The ALJ concluded that Plaintiff would not have been able to perform these activities if she suffered from symptoms at the level to which she testified. Tr. 1889.

The ALJ also observed that Plaintiff attended a large wedding and a school concert with little to no anxiety. Tr. 1890 (citing Tr. 1426, 1460, 1640). The ALJ found that although these activities were one-time events, they were large, crowded activities and her attendance was inconsistent with her allegations of being unable to unable to attend such events due to anxiety attacks in crowds or around people she

does not know.  Tr. 1890.  Plaintiff argues that the 2021 District Court decision precludes consideration of these activities and Defendant does not address this issue. ECF No. 15 at 31; Tr. 2045-46; ECF No. 17.

However, the ALJ also found that Plaintiff's ability to drive is inconsistent with her allegations of upper extremity symptoms and cognitive limitations.  Tr. 1890.  Furthermore, the ALJ observed that Plaintiff traveled to Hawaii for three and a half weeks in 2011, and that she traveled to Michigan by airplane in the summer of 2020 which involved a change of planes in Las Vegas both ways.  Tr. 1890, 1930-31.  The ALJ acknowledged that travel is not necessarily inconsistent with disability, but that Plaintiff's particular allegations of anxiety, panic attacks, and inability to be in crowds or interact with people she does not know is undermined by the type of travel she has done.  Tr. 1890.  This is a reasonable interpretation of the evidence.

Fourth, the ALJ found there is evidence of possible symptom exaggeration. Tr. 1891.  An ALJ may reject a claimant's testimony if there is evidence of a tendency to exaggerate symptoms.  *Tonapetyan*, 242 F.3d at 1148.  However, as Plaintiff points out, the ALJ considered the same records considered by the previous ALJ, which the 2021 District Court decision found to be insufficient evidence of symptom exaggeration.  ECF No. 15 at 31; Tr. 2043-44.

Fifth, the ALJ found Plaintiff stopped working due in part to reasons unrelated to her impairment.  Tr. 1892.  An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in evaluating

symptom testimony. *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ noted that Plaintiff told providers she quit her job due to anxiety and because of problems working the night shift with a three-year-old at home. Tr. 294, 1892. In April 2012, Plaintiff said she may be able to work again if she finds reliable childcare. Tr. 348, 1892. In 2015, Plaintiff testified that she could not juggle working full time and raising her child and that she could do one or the other but not both. Tr. 468, 1892. While the ALJ is correct that the record reflects Plaintiff reported that she stopped working "in part" due childcare issues, it also reflects that Plaintiff reported her anxiety and panic attacks were a factor. Tr. 475-76, 2105. This is not a clear and convincing basis for rejecting Plaintiff's symptom claims.

Any error in considering Plaintiff's symptom claims is harmless where, as here, the ALJ lists other clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason

for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

## B.    Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[2]

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by

---

[2] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

ORDER - 19

1  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

2  "However, the ALJ need not accept the opinion of any physician, including a

3  treating physician, if that opinion is brief, conclusory and inadequately supported by

4  clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

5  (internal quotation marks and brackets omitted).  "If a treating or examining doctor's

6  opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

7  providing specific and legitimate reasons that are supported by substantial

8  evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

9          Further, the opinion of an acceptable medical source, such as a physician or

10  psychologist, is given more weight than that of an "other source."  20 C.F.R. §§

11  404.1527, 416.927 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

12  "Other sources" include nurse practitioners, physician assistants, therapists, teachers,

13  social workers, spouses, and other non-medical sources.  20 C.F.R. §§ 404.1513(d),

14  416.913(d) (2013).  However, the ALJ is required to "consider observations by non-

15  medical sources as to how an impairment affects a claimant's ability to work."

16  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Pursuant to *Dodrill v.*

17  *Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ must give reasons germane to

18  "other source" testimony before discounting it.

19          The record contains more than 20 medical opinions.  Regarding Plaintiff's

20  mental impairments, the ALJ gave significant weight to the state agency psychiatric

21  consultants Leslie Postovoit, Ph.D. (Tr. 1117-19), Eugene Kester, M.D. (Tr. 1989-

92), and Steven Haney, M.D. (Tr. 2007-09), and gave some weight to the opinions of examining psychologists Sylvia Thorpe, Ph.D. (Tr. 922-29) and Karen Mansfield-Blair, Ph.D. (Tr. 2667-72).  Regarding Plaintiff's physical impairments, the ALJ gave significant weight to the opinions of state agency reviewing physicians Gordon Hale, M.D. (Tr. 1989), and Howard Platter, M.D (Tr. 2006-07).   Plaintiff argues the ALJ erred by discounting twelve other psychological opinions and three other medical opinions.  ECF No. 15 at 19-20.

Plaintiff argues that in discounting the opinions of treating and examining providers, the ALJ improperly concluded that the longitudinal record is inconsistent with their findings.  ECF No. 15 at 19-20.  The consistency of the medical opinion with the record as a whole is a relevant factor in weighing the medical opinion evidence.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  Plaintiff argues the (1) many abnormal objective findings support the limitations assessed by providers; (2) benign findings in the record are not inconsistent with the limitations assessed and are largely irrelevant to Plaintiff's impairments.  ECF No. 15 at 21, 18 at 2-3. Defendant argues that Plaintiff is asking the Court to improperly re-weigh the evidence.  ECF No. 17 at 8-9.  Defendant observes that the 2021 District Court decision found that treatment notes with normal exam findings from throughout the record undermine the severe limitations assessed by Dr. Colby and argues this applies more broadly to this ALJ's findings regarding numerous medical opinions.

ECF No. 17 at 10 (citing Tr. 2037-38).  Plaintiff argues the law of the case does not apply as to this issue only because additional evidence was added to the record.  ECF No. 18 at 4-5

As discussed *supra*, the ALJ discussed the longitudinal record in detail.  Tr. 1886-88; *see* Tr. 1892-94.  The ALJ acknowledged some findings of anxious mood or affect and tearfulness, but also observed there are numerous findings inconsistent with the functional restrictions alleged and assessed.  Tr. 1886, 1892, 1894.  The ALJ reviewed the longitudinal record, noting that Plaintiff's symptoms responded to treatment and are not as limiting as some of the medical providers opined.  Tr. 1893-94 (citing Tr. 344, 901, 892-93, 886-87, 687-88, 855-56, 844, 820-23, 785, 674, 668). The ALJ noted that apart from an anxious affect, mental status exams were mostly unremarkable, with little or no abnormality in speech, eye contact, thought process, memory, attention, concentration, behavior, or judgment, and Plaintiff frequently presented as alert, cooperative and pleasant.  Tr. 1892 (citing Tr. 1333, 1426-27, 1430-31, 1438-39, 1442-43, 1492-93, 1548-53, 1595-96, 1644-50, 1676, 1680, 1684, 1789, 1792, 1827, 2390, 2394, 2411, 2556, 2559, 2647-61, 2696, 2708, 2739, 2750, 2758, 2773-81).  Plaintiff argues anxious affect is the most important finding and that benign findings in other categories are less relevant.  ECF No. 15 at 21.  However, the ALJ acknowledged Plaintiff sometimes presented with anxious affect or mood or was tearful or had a tremor (Tr. 1358-59, 1382, 1431, 1439, 1446-47, 1466, 1648, 1813, 1823, 2374, 2396,

2409, 2499-2500, 2515, 2696), but also observed other times presented with no anxious affect (Tr. 1355, 1385, 1389, 1426-27, 1442-43, 1549, 1645, 2647-61). Tr. 1894.  Plaintiff also argues other records show findings that suggest impairment.  ECF No. 15 at 21 (citing Tr. 337-40, 349, 353, 356, 372, 375, 936, 1584, 1587-88, 1836, 1838, 2355, 2670-71, 297-79, 2994-95, 2997-98).  The ALJ found that Plaintiff's providers indicated her symptoms responded to treatment, she made great strides in managing her anxiety, and that Plaintiff made good or excellent progress with treatment.  Tr. 1892 (citing Tr. Tr. 1635, 2723, 2728, 2739, 2750, 2894, 2897, 2899, 2907, 2909, 2911).

Ultimately, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan*, 169 F.3d at 599-600.  It is not the role of the court to second-guess the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The existence of a legally supportable alternative resolution of the evidence does not provide a sufficient basis for reversing an ALJ's decision that is supported by substantial evidence.  *Sprague*, 812 F.2d at 1229.  The ALJ's discussion of the evidence reflects reasonable consideration of the record.  Plaintiff cites some records indicating symptoms of her impairments but does not show how the ALJ's interpretation of the evidence is incorrect or erroneous.  The discussion of the evidence reasonably explains the basis for the

ALJ's findings and the ALJ's interpretation of the longitudinal record is supported by substantial evidence.

   1. *Jeffrey Nelson, M.D.*

      In July 2012, Dr. Nelson, a treating psychiatrist, completed a "Mental Impairment Questionnaire" and indicated diagnoses of generalized anxiety disorder, alcohol dependence in remission, and PTSD.  Tr. 375.  He opined that Plaintiff would be off task more than 25 percent of the workday and assessed marked limitations in activities of daily living, social functioning, and maintaining concentration, persistence, or pace.  Tr. 376.

      Dr. Nelson also opined that Plaintiff has experienced three episodes of decompensation.  Tr. 376.  He indicated that Plaintiff had a medically documented history of affective disorder "of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support" with: (1) repeated episodes of decompensation, each of extended duration; (2) residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the individual to decompensated; and (3) a history of 1 or more years of inability to function outside a highly supported living arrangement.  Tr. 376.

      The ALJ gave little weight to Dr. Nelson's opinion.  Tr. 1894.  First, the ALJ found there is no medical evidence documenting a history of decompensation

episodes of the type or nature indicated in the form.[3]  Tr. 1893.  An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ found this undermines Dr. Nelson's opinion and suggests that he did not understand what is contemplated by the regulations in assessing a claimant.  Tr. 1893.  Understanding of disability programs and their evidentiary requirements is a relevant factor in considering a medical opinion.  20

---

[3] At the time of Dr. Nelson's opinion, episodes of decompensation were described in the Social Security Administration Program Operations Manual System (POMS) as, "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  POMS DI 34132.009 (Mental Listings from 12/18/07 to 09/28/16).  Episodes of decompensation could be shown by documentation of episodes of the need for significant alteration in medication or the need for a more structured psychological support system such as hospitalizations or placement in a halfway house.  *Id.*  Effective January 17, 2017, episodes of decompensation are no longer a separate area of functioning.  *Revisions to Rules Revised medical Criteria for Evaluating Mental Disorders*, 2016 WL 5341732, 81 Fed. Reg. 66138 (September 16, 2016).

C.F.R. §§ 404.1527(c)(6); 416.927(c)(6).  The ALJ also noted that Plaintiff has been able to function by living independently and caring for her child, which is inconsistent with his opinion regarding decompensation factors.  Tr. 1893.  This is a specific, legitimate reasons supported by substantial evidence.

Second, the ALJ found the opinion is inconsistent with the record as a whole.  Tr. 1893-94.  As discussed *supra*, this finding is supported by substantial evidence.

Third, the ALJ found that Dr. Nelson provided no basis for the conclusion that Plaintiff was likely to be off task for 25 percent or more of each workday and found no basis in his treatment notes.  Tr. 1893.  A medical opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228.  The ALJ also found that treatment notes from Dr. Nelson and therapist Cheryl May, who worked with Dr. Nelson, are not consistent with Dr. Nelson's opinion.[4]  Tr. 1894.  An ALJ may discount a medical source's opinion that is inconsistent with the source's other findings.  *Bayliss,* 427 F.3d at 1216.  The ALJ noted that office visit notes reflect treatment for mental health symptoms with primary complaints of anxiety that increased in social settings.  Tr. 335-73, 1894.  The ALJ acknowledged records from

---

[4] The 2020 District Court decision indicated the ALJ should summarize and interpret the clinical findings of Dr. Nelson and Ms. May in evaluating Dr. Nelson's opinion.  Tr. 2029.  The Court finds the ALJ complied with this direction.  Tr. 1894.

ORDER - 26

early 2012 indicate abnormalities in presentation, including anxious affect, pressured speech, and distraught presentation. Tr. 1894 (citing *e.g.*, Tr. 349, 353, 356). However, the ALJ noted that Plaintiff was experiencing a situational stressor involving the custody and care of her daughter. Tr. 1894 (citing *e.g.*, Tr. 351, 355). By April 2012, Plaintiff's own report and presentation showed improvement in her symptoms and ability to function, and later treatment notes showed ongoing improvements and stability with unremarkable mental status exams. Tr. 335-38, 342-43, 1894. In October 2012, she was doing "remarkably well," and her symptoms were controlled from November 2012 to February 2013. Tr. 886-87, 893-94, 901, 1893-94. Ms. May noted Plaintiff's mood and affect were "very positive, happy" and her behavior and functioning were described by Ms. May as "better than ever" in August 2013. Tr. 855-56, 1894. Her behavior and functioning were "exemplary" in October 2013, she was functioning well in March 2014, and she reported doing well in January 2015. Tr. 785, 821-23, 844, 1894. Plaintiff conclusively argues the treatment notes support Dr. Nelson's opinion but does not cite the record or show how the ALJ's interpretation of the record is erroneous. ECF No. 15 at 23. The ALJ's interpretation of the treatment notes is reasonable and based on the record. This is a specific, legitimate reason supported by substantial evidence.

Lastly, the ALJ found that Plaintiff's activities of caring for a child, managing social contact sufficient for shopping and airplane travel, managing her finances, and being "on top of most things" are inconsistent with Dr. Nelson's opinion. Tr. 1895.

Plaintiff argues this reasoning is precluded by the previous finding of the District

Court and Defendant does not address this issue.  ECF No. 15 at 23; ECF No. 17 at

11-12.  This reasoning is not legally sufficient in this case.  However, the ALJ

provided other specific, legitimate reasons for the weight assigned to Dr. Nelson's

opinion, so any error is harmless.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.

2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of*

*Health and Human Servs.,* 734 F.2d 1378, 1380 (9th Cir. 1984).

### 2.  Faulder Colby, Ph.D.

Dr. Colby completed a DSHS "Psychological/Psychiatric Evaluation" form in

August 2013.  Tr. 933-36.  He diagnosed posttraumatic stress disorder, generalized

anxiety disorder, obsessive-compulsive disorder (provisional), and alcohol

dependence in early full remission.  Tr. 934.  Dr. Colby assessed a severe limitation

in the ability to complete a normal workday and work week without interruptions

from psychologically based symptoms, and marked limitations in the ability to adapt

to changes in a routine work setting, maintain appropriate behavior in a work setting,

and set realistic goals and plan independently.  Tr. 935.

The ALJ gave little weight to this assessment.  Tr. 1895.  First, the ALJ found

this assessment is inconsistent with the overall treatment record which shows that

Plaintiff improved with treatment and presented with largely normal mental status

exams.  Tr. 1895.  As discussed *supra*, this reasoning is supported by substantial

evidence.

In May 2016, Dr. Colby completed a second DSHS Psychological/Psychiatric Evaluation form. Tr. 1581-88. He diagnosed delusional disorder, generalized anxiety disorder and somatic symptom disorder. Tr. 1585. Dr. Colby assessed severe limitations in the ability to perform activities within a schedule, maintain regular attendance, and be punctual; maintain appropriate behavior in a work setting; and complete a normal workday and work week without interruptions from psychological symptom; he assessed marked limitations in the ability to adapt to changes in a routine work setting and in the ability to communicate and perform effectively in a work setting. Tr. 1585-86.

The ALJ gave little weight to Dr. Colby's 2016 assessment. First, the ALJ found the extreme limitations indicated by Dr. Colby are not consistent with the record as a whole. As discussed *supra*, this is a specific, legitimate reason supported by substantial evidence.

Second, the ALJ noted that Dr. Colby's assessment that Plaintiff is unable to complete a normal workday/workweek and maintain regular work attendance are not explained by any rationale. Tr. 1896. An ALJ need not accept a physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan*, 42 F.3d at 1149; *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

Third, the ALJ found that Dr. Colby had a limited understanding of the longitudinal record based on a limited access to records. Tr. 1896. The extent to

which a medical source is "familiar with the other information in [the claimant's] case record" is a relevant factor in weighing a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Dr. Colby indicated that the only records he reviewed were his own previous report and the Social Security Administration determination against Plaintiff. Tr. 1581. Thus, the ALJ reasonably concluded that Dr. Colby's understanding of the longitudinal record was limited. Tr. 1896.

Fourth, the ALJ concluded Dr. Colby relied on Plaintiff's subjective report in considering her history and assessing limitations. Tr. 1896. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. In addition to the findings discussed *supra* regarding the reliability of Plaintiff's symptom claims, the ALJ noted that Plaintiff reported to Dr. Colby that she had been hearing and seeing ghosts and demons for many years, and that she and her daughter had been attacked physically by them. Tr. 1584-87. The ALJ noted that Dr. Colby found the report compelling, diagnosed delusional disorder, and strongly recommended treatment of the psychotic disorder. Tr. 1584-87. The ALJ observed that Plaintiff's report regarding ghosts and demons is found nowhere else in the extensive treatment record or in any other DSHS psychological examination. Tr. 1896 (citing *e.g.*, 292-315, 334-73, 378-418, 1350-71, 1635-65, 2351-2418, 2493-2587, 2695-2771, 2974, 3002). In fact, the ALJ observed that Plaintiff denied such symptoms and denied history of paranoia, delusions, and audiovisual

ORDER - 30

1   hallucinations.  Tr. 1896, 2360.  For this reason, the ALJ concluded that Dr. Colby's

2   reliance on Plaintiff's report is undermined by the record.

3          The 2020 District Court decision indicated that this is not a specific, legitimate

4   reason for rejecting Dr. Colby's opinion because the ALJ did not show that Dr.

5   Colby's opinion is based primarily on Plaintiff's subjective reports.  Tr. 2034.  Dr.

6   Colby conducted a mental status exam and clinical testing.  Tr. 1584-5, 1587-88.  In

7   the current matter, the ALJ again did not address Dr. Colby's mental status exam or

8   clinical test findings.  Nonetheless, because the ALJ cited other specific, legitimate

9   reasons supported by substantial evidence, any error in this reasoning is harmless.

10  *See Parra*, 481 F.3d at 747.

11          *3.  Aaron Burdge, Ph.D. and Janis Lewis, Ph.D.*

12          Dr. Lewis and Dr. Burdge completed "Review of Medical Evidence" forms in

13  August 2013 and June 2016, respectively.  Tr. 937-39, 1589.  The ALJ gave the

14  assessments little weight because they relied entirely on Dr. Colby's assessments

15  without reviewing any other evidence.  Tr. 1897.  The ALJ rejected the opinions for

16  the same specific, legitimate reasons provided for giving little weight to Dr. Colby's

17  opinions.  This is a legally sufficient conclusion.

18          *4.  Jamie Walker, ARNP and Tyal Hughes, M.S.*

19          Ms. Walker and Ms. Hughes co-signed a "Mental Medical Source Statement"

20  in April 2018.  Tr. 1785-87.  They assessed nine marked limitations and nine severe

21  limitations in nearly every category of mental functioning.  Tr. 1785-87.  They

indicated that Plaintiff would miss four or more days of work per month and would be off task more than 50 percent of the day.  Tr. 1787.

The ALJ gave little weight to the opinion because neither provider included any rationale explaining the extreme limitations, nor did either provider include an evaluation with objective findings supporting the limitations.  Tr. 1897.  A medical opinion may also be rejected by the ALJ if it is conclusory or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  Plaintiff argues that "treatment notes created by [Ms. Walker and Ms. Hughes] and other providers at their clinic provide more than enough support for the limitations they assessed" and that objective exams throughout the record support the limitations.  ECF No. 15 at 24-25.  However, Plaintiff does not cite any records from either provider, and as previously discussed, the longitudinal record supports the ALJ's conclusion.  This is a germane reason for giving less weight to the joint opinion.

### 5.  Heidi Blindauer

Ms. Blindauer, a WorkFirst employee, completed an undated DSHS "WorkFirst Documentation Request Form for Medical or Disability Condition."  Tr. 1578-80.  She stated Plaintiff's condition is "disabling generalized anxiety disorder" and opined that Plaintiff could work zero hours per week.  Tr. 1578.

The ALJ gave no weight to Ms. Blindauer's opinion because she did not provide a completed evaluation with objective findings or reference to specific records consistent with the limitation assessed.  Tr. 1897.  The ALJ also found the

ORDER - 32

longitudinal record is inconsistent with her opinion.  Tr. 1897.  As discussed *supra*,

these are both germane reasons supported by substantial evidence.  Furthermore,

the ALJ found her opinion is essentially a finding that Plaintiff cannot work, which

is a legal conclusion reserved to the Commissioner.  Tr. 1897.  A medical source

opinion that a claimant is "disabled" or "unable to work" is not a medical opinion

and the ALJ is not required to determine that the claimant meets the statutory

definition of disability.  20 CFR §§ 404.1527(d)(1), 416.927(d)(1).  The

determination of disability is an issue reserved to the Commissioner. Social

Security Ruling (S.S.R.) 96-5p, 1996 WL 374183 at *5 (July 2, 1996).  This is also

a germane reason for rejecting the opinion.

        *6.  Tasmyn Bowes, Psy.D., and Thomas Genthe, Ph.D.*

        Dr. Bowes completed a DSHS "Psychological/Psychiatric Evaluation" form in

December 2018 and diagnosed PTSD, generalized anxiety disorder, and persistent

depressive disorder.  Tr. 2974-79.  She assessed three marked limitations as well as

severe limitations in the ability to perform activities within a schedule, maintain

attendance, and be punctual, and in the ability to complete a normal workday and

work week without interruptions from psychological symptoms.  Tr. 2977.

        Dr. Genthe completed a DSHS "Psychological/Psychiatric Evaluation" form in

November 2020 and diagnosed panic disorder, ADHD, and alcohol use disorder in

sustained remission.  Tr. 3002-08.   He assessed five marked limitations.  Tr. 3005.

The ALJ gave little weight to the opinions of Dr. Bowes and Dr. Genthe.  Tr. 1897.  First, the ALJ found "neither examiner had a good understanding of the overall diagnostic picture" because they each saw Plaintiff on one occasion and reviewed no outside records.  Tr. 1898 (citing Tr. 2974, 3002).  The ALJ concluded the opinions of Dr. Postovoit, Dr. Kester, and Dr. Haney, were more reliable and entitled to more weight because they were able to review more of the record.  Tr. 1898.  Plaintiff argues this is a contradictory finding, since the ALJ gave more weight to sources who never met Plaintiff than to sources who examined Plaintiff.  ECF No. 15 at 27.  However, the ALJ explained that the reviewing opinions were more reliable because they were able to review extensive records.  Tr. 1898.  When the opinion of a nonexamining psychologist is consistent with other evidence, it may be entitled to greater weight than the opinion of an examining psychologist.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041-43 (9th Cir. 1995).

The ALJ also found that the opinions of Dr. Bowes and Dr. Genthe are not consistent with the record as a whole.  Tr. 1898.  The ALJ noted that they both assessed marked limitations in the ability to adapt to a work setting; maintain appropriate behavior; and communicate or perform effectively in a work setting.  Tr. 2977, 3005.  The ALJ concluded these limitations are not consistent with the longitudinal record, discussed *supra*, based on citation to records showing Plaintiff sometimes presented with anxious affect, but most treatment notes showed few other abnormalities.  Tr. 1898.  The ALJ noted that Plaintiff was able to manage her

ORDER - 34

schedule and attend appointments on a consistent basis; she managed her daily

activities consistently and independently, such as caring for her child and shopping.

Tr. 1898.  She also managed to travel by airplane and reported that she was "on top

of most things" related to budgeting, home organization, and parenting her child.  Tr.

1898.  These activities were reasonably cited by the ALJ as inconsistent with the

limitations assessed by Drs. Bowes and Genthe and this is a specific, legitimate

reason supported by substantial evidence.

Third, the ALJ found that the assessed limitations in completing a normal

workday/workweek, performing activities within a schedule, and maintaining regular

attendance are not probative or persuasive because they do not reflect precise

vocational restrictions.  Tr. 1898.  The ALJ observed that the assessments do not

reflect a specific number of days or hours each month that Plaintiff would not be able

to work.  Tr. 1898.  Plaintiff argues it is the ALJ's duty to resolve ambiguities in the

evidence, so the ALJ should have made that determination after weighing all the

evidence.  ECF No. 15 at 27.  However, an ALJ may reject an opinion that does "not

show how [the claimant's] symptoms translate into specific functional deficits which

preclude work activity." *Morgan,* 169 F.3d at 601.  In making the RFC finding, the

ALJ need only include credible limitations supported by substantial evidence.

*Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence

from discounted medical opinions into the RFC).  When evidence reasonably

supports the ALJ's decision and the ALJ's interpretation of the evidence is rational,

the decision should stand.  *Tackett*, 180 F.3d at 1098; *Morgan*, 169 F.3d at 599.  This is a specific, legitimate reason supported by substantial evidence.

### 7.  Holly Petaja, Ph.D.

Dr. Petaja completed a DSHS "Review of Medical Evidence" form in December 2018.  Tr. 2987.  She reviewed the medical reports of Dr. Bowes, Dr. Thorp, and the 2016 report of Dr. Colby.  Tr. 2987.  She opined that the severity and functional limitations were supported by available medical evidence but provided no functional assessment or independent diagnosis.  Tr. 2987.

The ALJ gave no weight to the assessment because Dr. Petaja provided no functional assessment.  Tr. 1898.  As noted *supra*, an ALJ may reject an opinion that does not show how symptoms translate into functional limitations.  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *Morgan,* 169 F.3d at 601.  This is a specific, legitimate reason supported by substantial evidence.

### 8.  Karen Mansfield-Blair, Ph.D.

Dr. Mansfield-Blair examined Plaintiff in February 2020.  Tr. 2667-2672.  She diagnosed generalized anxiety disorder and posttraumatic stress disorder and made the following assessment:  she would not have difficulty performing simple and repetitive tasks; she would have difficulty performing detailed and complex tasks; she would have difficulty accepting instructions from supervisors; she would not have difficulty interacting with coworkers; she would not have difficulty performing activities on a daily basis without special or added instructions; she would not have difficulty

maintaining regular attendance and completing a normal workday/work week without interruptions from a psychiatric condition; and she would have difficulty dealing with the usual stress encountered in the workplace.  Tr. 2671-72.

The ALJ gave some weight to Dr. Mansfield-Blair's opinion.  Tr. 1898.  The ALJ found that Dr. Mansfield-Blair's assessment that Plaintiff would not have difficulty performing simple and repetitive tasks or maintaining regular attendance and completing a normal workday and work week are supported by the record.  Tr. 1898.  However, the ALJ found that Dr. Mansfield-Blair's opinion that Plaintiff "would have difficulty" accepting instructions from supervisors and dealing with the usual stress of the workplace does not indicate a specific level of functional impairment.  Tr. 1898.  An ALJ may reject a medical opinion that fails to specify any functional limitations or describes limitations equivocally.  *See Ford*, 950 F.3d at 1156 (finding a physician's descriptions of the plaintiff's limitations "as 'limited' or 'fair' were not useful because they failed to specify functional limits"); *see Jean C. v. Comm'r of Soc. Sec. Admin.*, No. C22-1505-DWC, 2023 WL 4106053, at *3 (W.D. Wash. June 21, 2023) (affirming finding that inconclusive and conditional statements of "would likely be unable" to perform lacked specificity).  This is a specific, legitimate reason supported by substantial evidence.

*9.  LaRee Born, M.S.*

Ms. Born completed a "Mental Medical Source Statement" form in February 2021.  Tr. 2692-94.  She assessed marked limitations in 14 functional areas, opined

that Plaintiff would miss four or more days of work per month, and would be off task 26 to 50 percent of the workday.  Tr. 2692-94.

The ALJ gave little weight to Ms. Born's assessment because it is unsupported and inconsistent with the record as a whole.  Tr. 1899.  The ALJ noted that there are no exam findings or objective findings provided to support Ms. Born's conclusions, and there is no rationale or explanation for the extreme limitations assessed.  Tr. 1899.  An ALJ need not accept a medical opinion that is conclusory and brief and unsupported by clinical findings.  *Tonapetyan*, 42 F.3d at 1149; *Matney*, 981 F.2d at 1019.  Plaintiff argues the opinion "is supported by a substantial amount of evidence and objective findings in treatment notes composed by her and others at her clinic," but does not cite any such evidence or findings.  ECF No. 15 at 29.  The ALJ also concluded that Ms. Born's opinion is inconsistent with the longitudinal record, as discussed *supra*.  Tr. 1899.  The ALJ's findings are reasonable and based on the record.  These are germane reasons supported by substantial evidence.

10.  *Nina Flavin, M.D.*

In March 2018, Dr. Flavin, a treating rheumatologist, wrote a letter stating that fibromyalgia symptoms "can affect a person's ability to work efficiently and reliably."  Tr. 1572.  She stated that Plaintiff "is unable to continue working and I support her decision to apply for disability."  Tr. 1572.  In treatment notes from the same day, Dr. Flavin stated, "[g]iven the severity of her symptoms that she reports, I

ORDER - 38

certainly think that maintaining steady employment would be very difficult and I would support her decision to apply for disability." Tr. 1838.

The ALJ gave little weight to Dr. Flavin's statements. Tr. 1900-01. The ALJ found the statements are conclusory and do not contain specific functional restrictions. Tr. 1901. An ALJ may reject an opinion that does "not show how [the claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan,* 169 F.3d at 601. Plaintiff essentially argues the ALJ should have overlooked the lack of functional assessment, and instead should have considered Dr. Flavin's credential as a specialist in rheumatology in evaluating her statements. ECF No. 15 at 26. However, Plaintiff cites no authority for this proposition and the Court finds none. This is a specific, legitimate reason for giving less weight to the statements.

Second, the ALJ determined that Dr. Flavin's finding that Plaintiff is disabled and unable to work is not a medical opinion. Tr. 1901. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, what the claimant can do despite any impairment, and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The ALJ is responsible for determining whether a claimant meets the statutory definition of disability, not a physician. SSR 96-5p, 1996 WL 374183 at *5 (July 2, 1996). A medical source statement that a claimant

ORDER - 39

is "disabled" or "unable to work" does not require the ALJ to determine the claimant meets the definition of disability.  20 CFR §§ 404.1527(d)(1), 416.927(d)(1).  This is a specific, legitimate reason supported by substantial evidence.

The ALJ also considered that Dr. Flavin only saw Plaintiff once in January before her March 2021 statements of disability.  Tr. 1901.  The ALJ observed that Dr. Flavin's two examinations of Plaintiff found no abnormal musculoskeletal or neurological findings.  Tr. 1901 (citing Tr. 1836, 1838).  Plaintiff argues the ALJ improperly considered benign findings because Dr. Flavin found Plaintiff had 18 out of 18 tender points on examination.  ECF No. 15 at 26.  The Court notes that the tender points finding lends credibility to the diagnosis of fibromyalgia, but the Plaintiff cites no authority or evidence indicating that there is a nexus between tender points and any specific functional limitations.  Nonetheless, a lack of objective evidence is not typically a legitimate basis for rejecting an assessment of fibromyalgia.  *See Revels*, 874 F.3d at 663.  However, the ALJ also found Dr. Flavin's statements are inconsistent with the longitudinal record, which, as discussed *supra*, is supported by substantial evidence.  Even if the ALJ erred in considering a lack of supporting objective evidence, the ALJ gave other specific, legitimate reasons supported by substantial evidence and any error would be harmless.  *See Parra*, 481 F.3d at 747.

ORDER - 40

*11. Kimberly Ferguson, PA-C*

Ms. Ferguson completed a DSHS "Physical Functional Evaluation" form in June 2016. Tr. 1590-1594. She listed diagnoses of chronic musculoskeletal pain and anxiety disorder. Tr. 1591. She opined that Plaintiff is severely limited, meaning unable to meet the demands of sedentary work. Tr. 1592. She noted that Plaintiff is unable to meet demands of work "due to anxiety about personal health." Tr. 1592.

The ALJ gave no weight to Ms. Ferguson's opinion to the extent it is an opinion regarding mental limitations. Tr. 1897. The ALJ noted that Ms. Ferguson did not conduct an exam regarding mental function and did not provide an evaluation with objective findings consistent with the mental limitation assessed. Tr. 1897. This is a germane reason for rejecting the mental limitations assessed by Ms. Ferguson.

The ALJ also gave no weight to Ms. Ferguson's opinion regarding fibromyalgia and musculoskeletal pain. Tr. 1900. The ALJ noted that Ms. Ferguson did not provide a completed evaluation with objective finding supporting the assessed limitations. Tr. 1900. The ALJ observed that in fact Ms. Ferguson's exam findings were normal. Tr. 1593-95, 1900. Further, the ALJ observed that Ms. Ferguson's conclusion that Plaintiff cannot perform even sedentary work conflicts with her assessment that Plaintiff's musculoskeletal pain causes no interference in the ability to perform basic work activities. Tr. 1591, 1900. As stated *supra*, a medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Plaintiff

ORDER - 41

argues only that lack of objective findings is not a reasonable basis to reject

limitations caused by fibromyalgia but does not address the ALJ's other reasoning.

ECF No. 15 at 26-27.  The ALJ's reasons are germane and supported by substantial

evidence.

    *12. June Bredin, M.D.*

    Dr. Bredin completed a DSHS "Physical Evaluation" form in December 2018.

Tr. 2988-90.   She diagnosed PTSD/anxiety, fibromyalgia/spinal degenerative joint

disease, and paroxysmal supraventricular tachycardia and indicated that all three

diagnoses were moderately severe.  Tr. 2989.  Dr. Bredin opined that Plaintiff is

severely limited due to PTSD, meaning unable to meet the demands of sedentary

work, noting that otherwise Plaintiff would be able to perform sedentary work.  Tr.

2990.

    The ALJ gave little weight to Dr. Bredin's opinion that Plaintiff cannot work

due to PTSD.  Tr. 1899.  The ALJ found that Dr. Bredin did not provide a

function-by-function assessment of Plaintiff's mental symptoms, other than to

assess a moderate limitation in communication.  Tr. 1899.  The ALJ also found that

Dr. Bredin did not explain how PTSD would cause limitations preventing

sedentary work.  Tr. 1899.  First, This inconsistency in the opinion was reasonably

considered by the ALJ.  *Bray*, 554 F.3d at 1228 (indicating a medical opinion may

be rejected by the ALJ if it contains inconsistencies).  Second, Plaintiff argues

there are clinical findings in Dr. Bredin's treatment notes which support her

ORDER - 42

conclusions.  ECF No. 15 at 28.  However, Dr. Bredin did not reference any findings, and neither Plaintiff nor Dr. Bredin explained how findings such as "moderately constricted mood and affect," "somewhat vague historian," and "soft spoken," translate into disabling limitations.  Tr. 2992, 2995, 2998.  The ALJ's finding is supported by substantial evidence.

The ALJ also gave little weight to Dr. Bredin's opinion that Plaintiff was limited to sedentary work due to her physical impairments.  Tr. 1901.  The ALJ found the opinion is inconsistent with Dr. Bredin's concurrent physical examination, which was essentially normal.  Tr. 2997-98.  The ALJ also found Dr. Bredin's opinion is inconsistent with the record as a whole, which, as discussed *supra*, the ALJ reasonably evaluated.  Plaintiff argues the ALJ improperly considered the lack of objective evidence of fibromyalgia limitations.  ECF No. 15 at 28.  Nevertheless, it is noted that the RFC is for sedentary work, which is consistent with the physical limitation assessed by Dr. Bredin.  Any error by the ALJ is therefore harmless.  *See Parra*, 481 F.3d at 747.

## C.    Lay Witness Statements

Plaintiff's sister completed third party Function Report forms in June 2011 and August 2019 and submitted a letter in November 2015.  Tr. 240-47, 663-64, 2288-95.  Two of Plaintiff's brothers and Plaintiff's mother submitted letters in November 2015.  Tr. 665-67.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Comm'r of Soc. Sec. Admin.*,

ORDER - 43

454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

The ALJ considered the lay witness statements of Plaintiff's sister, brothers, and mother.  Tr. 1901-02.  The ALJ found the statements generally reflect the same allegations made by Plaintiff which is that she cannot work due to anxiety and pain.  Tr. 1901-02.  Where the ALJ provides germane reasons for giving less weight to subjective testimony from one witness, similar testimony by a different witness may also be given less weight.  *See Diedrich v. Berryhill*, 874 F.3d 634, 645 (9th Cir. 2017); *Molina*, 674 F.3d at 1114 ("[B]ecause the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.") (quoting *Valentine*, 574 F.3d at 694 (internal quotation marks omitted)).  The ALJ referenced the findings related to Plaintiff's symptom statements and the longitudinal record and gave little weight to the statements.  Tr. 1902.  As discussed, *supra*, the ALJ's findings are supported by substantial evidence and the reasons are germane to the lay witness statements.

**D.    Step Five**

Plaintiff contends the ALJ erred at step five because the finding that there are jobs available that Plaintiff can perform was based on an incomplete hypothetical. ECF No. 15 at 33-34.   The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at 1164; *Magallanes*, 881 F.2d at 756-57; *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*  Plaintiff's argument assumes the ALJ erred in evaluating the opinion evidence and Plaintiff's testimony. Having found otherwise, the Court concludes the ALJ's step five finding is supported by substantial evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1    1.  Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2    2.  Defendant's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3    **IT IS SO ORDERED**.   The District Court Clerk is directed to enter this

4    Order and provide copies to counsel.  Judgment shall be entered for Defendant and

5    the file shall be **CLOSED**.

6    **DATED** September 19, 2023.

7

8    _____
                    LONNY R. SUKO
9                 Senior United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

ORDER - 46